[Cite as *In re M.C.*, 2014-Ohio-4521.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: : 

                                CASE NOS. CA2014-05-098

      M.C., et al. :                           CA2014-05-099

                                       :              O P I N I O N
                                                     10/13/2014

                                         : 

                                         : 

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2012-03-026

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for Butler County Childrens Services

Amy Ashcraft, 240 East State Street, Trenton, Ohio 45067, Guardian Ad Litem

Dawn S. Garrett, 9435 Waterstone Boulevard, Suite 140, Cincinnati, Ohio 45249, for appellant

Jeannine C. Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, for children

      **S. POWELL, J.**

      {¶ 1}  Appellant, the mother of M.C. and G.T., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the two children to a children services agency.

{¶ 2} Appellant is the mother of five children. The three youngest children were born after Butler County Children Services began working with the family, and are not involved in this appeal, as they were all born outside of, and have never resided in, Butler County.

{¶ 3} Appellant's family has a history with Butler County Department of Job and Family Services that dates back to 2007 when M.C. and G.T. were removed from their parents' home.[1] Problems at the time of the 2007 complaint included G.T.'s diagnosis of failure to thrive, substance abuse by the parents, G.T.'s hospitalization for an unexplained injury that was later determined to be caused by abuse, along with additional concerns regarding the family as expressed by hospital staff.

{¶ 4} Various services were provided for the family over the next several years, and at times the parents made some measure of progress, but yet failed to ever complete case plan requirements. Ultimately, the agency's request for permanent custody was denied in March 2012, and the court ordered that the children be reunified with their parents. M.C. and G.T. were placed back in their parents' home in March 2012. At this time, the parents had two younger sons in the home who were born after the case began and after the family moved from Butler County to Warren County.

{¶ 5} On July 20, 2012, four months after the children had been returned to their parents, the agency filed new complaints alleging that M.C. and G.T., who were now eight and five years old respectively, were dependent children. The complaint indicated that after the children were placed back in the custody of their parents, the father was arrested for domestic violence involving the mother. A police report indicated the father was intoxicated and threatened to kill the mother.

---

1 M.C.'s biological father is unknown. G.T.'s father was found in loco parentis of M.C. during the case, and for ease of discussion, will be referred to as "father" in this opinion.

**{¶ 6}** The complaint also indicated that G.T.'s ongoing behavioral problems had escalated to the point that the child was attempting to harm himself by wrapping a cord around his neck, holding a knife to his neck, and running in front of cars. When police were called to the home, G.T. threw various items at police officers when they arrived. The complaint indicated that G.T. had stated he wanted to kill his brothers and that he caused bruises to the two-year-old and slammed the one-year-old to the floor, hitting his younger sibling's head. According to the complaint, G.T. was hospitalized on two occasions because of these behavioral issues.

**{¶ 7}** In addition, the complaint stated that the agency visited the home several times in July 2012, and the home was dirty, cluttered and unsafe. The home was cluttered with garbage and clothing on the floor, the beds did not have sheets or blankets on them, exposed food was found inside and outside the home, boards with nails were lying in the backyard, and dangerous items, such as knives and scissors were within reach of the children.

**{¶ 8}** The complaint also indicated that agency workers smelled an odor or marijuana at the house and that the parents refused to complete a drug screen. In addition, the complaint stated that the agency had received reports that the mother was stressed in dealing with the children. The agency requested permanent custody of M.C. and G.T. in the complaint.

**{¶ 9}** An adjudication hearing was held on July 31, 2012. The parents failed to appear and the children were adjudicated dependent. The parents failed to pursue visitation with the children until they requested visitation in November 2012. However, because the children had not had contact with their parents for several months, and a dispositional hearing was scheduled within a few weeks, a therapist for the children recommended visits not resume until a custody decision was made. The magistrate considered the issue, and

ordered that the parents' visitation be scheduled with the first two visits including only M.C. and G.T, along with their parents. After those two visits, the younger children were allowed to attend. On January 31, 2013, the parents began attending therapeutic visitations with the children at the Family Connections visitation center.

{¶ 10} After a dispositional hearing, the magistrate denied the agency's request for permanent custody. The magistrate determined that it was not in the children's best interest to grant permanent custody, ordered the mother to apply for therapeutic services in Warren County, and ordered that the children be placed back in the home after a new residence and therapeutic services were in place.

{¶ 11} The trial court considered the agency's objections to the magistrate's decision and found that one month after the magistrate's decision, the family moved to Hamilton County. In addition, the court found that the parents have a lengthy history of unstable residences, residing in at least three separate counties since the filing of the complaint in July 2012. The court also found that the children had very little contact with their parents in the last twelve months.

{¶ 12} The court found the agency's objection to the magistrate's decision well-taken and remanded the case to the magistrate for further proceedings regarding disposition on the request for permanent custody, ordering that the agency's request for permanent custody be continued in progress. The trial court ordered the magistrate to conduct in camera interviews with M.C. and G.T., and also ordered the agency to conduct a home study on the parents' current residence. The trial court instructed that on remand, the magistrate should determine if it is in the children's best interest to file a reunification plan or whether the agency's request for permanent custody should be granted. The court further ordered that the parties were to appear in court on November 22, 2013 for a hearing in front of the magistrate.

{¶ 13} On October 8, 2013, the magistrate issued an order granting an emergency ex

parte order that visitation was to only include M.C. and G.T., and not the three younger children, unless their attendance was recommended by the family therapist. This order was requested on the basis that visitation center staff reported that visits were chaotic because of the behavioral needs of the three younger children and it was difficult for the parents to focus on M.C. and G.T. during visits.

{¶ 14} The court fully considered the issue at a shelter care hearing on November 1, 2013. The court reviewed a letter written by the family therapist regarding the chaotic nature of the visits and the need for the children to engage solely with their parents at visitation in order to rebuild a healthy attachment and parent-child bond. In response, appellant testified regarding her position on the motion. Appellant indicated that since the order restricting visitation was put in place, she had to cancel two visitations because she does not trust people to babysit the three younger children. She further admitted that she was presented with several alternatives which would allow the visitations to occur, including having agency workers watch the younger children, and for her and the father to alternate time during visits or alternate visitation weeks. However, appellant indicated she was unwilling to participate in any of the alternatives offered. She indicated that if she was not allowed to bring the younger children, she probably would not attend future visitations. She further indicated she was aware the visitation therapist was recommending therapy for the father and herself, but she did not care what the therapist was ordering.

{¶ 15} The magistrate issued an order continuing the restriction on visitation and finding that the therapist's recommendations were akin to medical advice as they related to the well-being of the children. The court further found that the parents rejected reasonable offers from the agency which would have alleviated their problems with visitation. The parents failed to attend any further visitations.

{¶ 16} As instructed by the trial court, the magistrate held a hearing on November 22,

2013, regarding the permanent custody request. Both parents failed to attend the hearing. The parties presented arguments on their positions regarding the request for permanent custody. The court indicated that in camera interviews were scheduled with both children in December, and a decision would be issued after the interviews were completed.

{¶ 17} The magistrate subsequently held in camera interviews with the children. On February 10, 2014, the magistrate issued a decision, finding permanent custody was in the best interest of the children. Appellant's objections to the decision were overruled by the trial court on April 24, 2014.

{¶ 18} Appellant now appeals the trial court's decision to grant permanent custody of M.C. and G.T. to the agency and raises the following single assignment of error for our review:

{¶ 19} THE COURT'S ADJUDICATION OF DEPENDENCY AND DISPOSITIONAL ORDER OF PERMANENT CUSTODY[,] DENYING LEGAL CUSTODY TO THE MOTHER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WAS BASED ON IMPROPERLY CONSIDERED HEARSAY EVIDENCE WAS BASED ON INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS AND THE EVIDENCE FAILED TO MEET THE REQUISITE CLEAR AND CONVINCING STANDARD. [sic.]

{¶ 20} Before a natural parent's constitutionally protected liberty interest in the care and custody of her children may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient

conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 21} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 22} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that M.C. and G.T. have been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the request for permanent custody. However, appellant does dispute the juvenile court's finding that granting permanent custody of the children to the agency is in the children's best interest.

{¶ 23} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 24}  In the magistrate's initial decision denying permanent custody, the magistrate found that the family had a lengthy history with children services that began in 2007.  The magistrate noted that the agency also filed complaints regarding the two younger siblings, but the complaint was dismissed due to lack of jurisdiction because the family was living in Warren County and the two youngest children had never resided in Butler County.  The magistrate also noted that the agency made a referral to Warren County Children Services, but that agency investigated and closed their case as unsubstantiated.  The magistrate further reviewed the procedural history of the case, including the parents' failure to appear at several court hearings.

{¶ 25}  In the decision, the magistrate considered the statutory best interest factors and found that M.C. has a strong bond with her mother.  The magistrate found M.C. is very attached to G.T., but that her relationship with her younger brother has been described as "parentified."  The magistrate also found that M.C. often talks about her younger half-siblings.

{¶ 26}  The magistrate found that G.T., who was removed from the home at the age of 11 months, also has a bond with his parents, but the bond is not as strong as his sister's.  The magistrate echoed the concern that G.T. may be developing attachment issues, as discussed by G.T.'s attorney.  The magistrate reviewed the children's placements, finding that they had been in five foster homes during the course of both cases.  In the current case,

they were placed in a therapeutic foster home. Their behaviors have improved in this home and they enjoy activities with the extended foster family. The foster mother indicated at the hearing that they are not interested in adoption, but she would like to remain involved in the children's lives.

{¶ 27} The magistrate also found that there was no request for an in camera interview with the children, but the court considered the recommendations of the children's guardian ad litem and the attorney for the children. The guardian ad litem advocated that permanent custody be granted to the agency. The attorney for the children argued that the motion for permanent custody should be denied because the agency had not done enough to reunify the family.

{¶ 28} With regard to the custodial history of the children, the magistrate determined that M.C. and G.T. were placed in the agency's temporary custody in December 2007 to March 2012, with an extended visit occurring from December 2008 to May 2009. They were placed in the temporary custody of the parents in March 2012, and were back in the temporary custody of the agency in July 2012.

{¶ 29} The magistrate determined that the children are in need of a legally secure placement. The magistrate found that G.T. has exhibited severe behavioral issues, both at home and in foster placements. He is doing well in his current placement in a therapeutic foster home, but because the foster parents are not interested in adopting, he will face more uncertainty. M.C. has continued to question whether it was her fault that she was removed from her parents' home.

{¶ 30} The magistrate reviewed the agency's involvement and determined that the agency's lack of action after the court denied the agency's motion for permanent custody in February 2012 was particularly egregious. The agency did not implement a reunification plan, but instead advised the foster mother to schedule three weekend visits, and then on the

fourth weekend, the children were returned to their parents permanently. For the first four weeks, caseworkers did not visit the family to determine how the reunification was progressing and the agency did not offer to help locate services for the family in Warren County. The magistrate also considered the testimony of a Warren County therapist from the Solutions agency who was contacted by the mother regarding possible therapy for G.T. and the family.

{¶ 31} In addition to the problems due to the agency, the magistrate found that the parents' actions were also detrimental to the children's well-being, and that the parents contributed to the problems in the case. The magistrate discussed the parents' failure to appear at crucial hearings, and failure to bring matters to the court's attention that would have better helped the court to fashion orders for the reunification of the family. The magistrate also found that the parents failed to demonstrate effort to attend visits, finding that the mother did not make a real effort to begin visitation until November 2012. The magistrate found the parents exacerbated the situation due to their extreme animosity toward the agency.

{¶ 32} Based on a review of the problems the magistrate found on the part of both the agency and the parents, the magistrate determined that it could not find that permanent custody was the only way a legally secure placement could be achieved. The magistrate found that the children could be maintained in the home if a service such as Solutions were in the home helping with the transition and meeting the children's therapeutic needs. However, the magistrate noted that the parents reported that they were in the process of obtaining a new home in Warren County.

{¶ 33} As mentioned above, after the remand by the trial court and further proceedings, the magistrate issued a decision granting the agency's request for permanent custody. In this decision, the magistrate again reviewed the children's custodial history,

finding that the children have been in the agency's custody for yet another year since the time of the previous decision. The magistrate found that since the time of the previous decision, the parents again uprooted the family and moved to Hamilton County and were evicted, without reporting the move to the agency. The agency later received a report that the family was residing at the Value Inn in Lebanon, Warren County, but the inn staff indicated that there was no one with the family name registered. The agency located the mother at the maternal grandmother's home in Hamilton several times, but the mother insisted they were not living there and that they were staying at the hotel.

{¶ 34} The magistrate further found that despite its efforts, the agency was unable to complete the home study because the mother continued to avoid initiating the process despite being urged several times to do so by the home study specialist. The parents then moved to a residence in South Lebanon, asking the agency to help them obtain furniture.

{¶ 35} The magistrate reviewed the problems with visitations, which occurred in a supervised setting due to the parents' unstable living environment. The magistrate indicated that an order was issued that the three younger children not attend the therapeutic visitations unless recommended by the family therapist. The therapist reported that after the order, the next few visits were much more beneficial for M.C. and G.T. and the family appeared to be moving toward being more productive in building positive experiences and rebuilding healthy and secure parent-child relationships. However, soon after, the parents stopped attending visits.

{¶ 36} The magistrate found that throughout the pendency of the two cases, the case plan has always delineated that the parents must provide a safe and stable residence for the children. In addition the parents were to demonstrate an ability to meet the children's therapeutic needs, particularly G.T.'s behavioral needs. The magistrate found that since the time of the previous decision, the parents failed to meet these two goals. The magistrate

indicated that concern was expressed in the previous decision regarding the parents' residence and possible relocation, and since that time, the parents failed to maintain a residence.

{¶ 37} The magistrate further found that the parents failed to demonstrate an understanding of M.C. and G.T.'s emotional issues based on their lack of follow-through with the family therapist's recommendations. Based on a review of the evidence, the magistrate determined that there was clear and convincing evidence that the parents failed continuously and repeatedly to remedy the conditions causing the children to be placed outside the home.

{¶ 38} The magistrate indicated that it previously faulted the agency for placing the children back in the home in March 2013 with no further services or supervision. The magistrate found, however, that after the trial court remanded the case, the agency attempted to provide therapeutic services to the family, but the parents chose to reject those services. The magistrate also found that the parents were ordered to complete the home study, but were unable to maintain a stable residence for any length of time.

{¶ 39} The magistrate indicated that the previous decision essentially gave the parents another chance to demonstrate that they could provide a stable environment for the children.

{¶ 40} The magistrate also considered the guardian ad litem's recommendation that the children be placed in the permanent custody of the agency and considered the in camera interviews it conducted with the children.

{¶ 41} The magistrate discussed the emotional and psychological needs of the children based on evidence presented previously and determined that the children need stability. The magistrate concluded that, after reviewing the previous evidence along with the events that occurred after the magistrate's previous decision, it was unwilling to gamble on the children's future any longer by continuing a "waiting game" to see if the parents could maintain a stable residence and meet the children's therapeutic needs. The magistrate

found that the agency had presented clear and convincing evidence that the parents are not in the position to provide the needed stability now, or in the near future. The magistrate concluded that the children cannot be placed with the parents within a reasonable time and permanent custody was in the children's best interest. As mentioned above, after considering the mother's objections, the trial court adopted the magistrate's decision.

{¶ 42} On appeal, appellant first argues that the facts did not support a dependency finding, do not support continued removal from the home, do not reflect reasonable efforts by the agency and do not support a finding by clear and convincing evidence that permanent custody is justified. Appellant's brief reviews the statutory standards for granting permanent custody and recites facts she contends support her position. She argues the children are bonded to the parents and despite investigations by Warren County Children Services, custody of the three younger children remains with their parents. She argues a legally secure placement can be achieved without a grant of permanent custody.

{¶ 43} As support, appellant argues there were no hazardous conditions in the home in July 2012 to support the children's removal, and the "shakiness of the grounds in this case is apparent from the bizarre procedural history." She argues there were never sufficient grounds for the removal of the children, the agency did not attempt a true reunification and the mother was unable to visit in a reasonable manner without bringing her other children based only on a hearsay report.

{¶ 44} We find no merit to appellant's arguments. Appellant argues that the children should not have been adjudicated dependent because the parents were not present at the hearing and the court failed to grant a continuance. However, the parents were informed of the date of the hearing, yet failed to attend. The court waited 25 minutes, but the parents still did not appear. The state and guardian ad litem objected to a continuance, as the date had been set and the parents notified. The court denied the continuance finding that the parents

were aware of the date, and had time to arrange for transportation, but failed to do so. The court then proceeded with the adjudication based on the allegations in the complaint. We find no error in the court's decision to deny the continuance and proceed with the adjudication.

{¶ 45} To the extent that appellant is arguing that the agency never should have been involved, this issue is moot, as the agency was, in fact, involved and the children were found dependent after the parents failed to appear at the adjudication.

{¶ 46} Once the children were removed from the home and adjudicated dependent, the parents did very little to establish that the children could be returned within a reasonable time. They initially failed to set up visits with the children which caused further problems in the parent-child relationship. Even after the magistrate denied permanent custody and the court was considering the objections, the parents failed to visit the children because of the restriction that the younger children not attend visits. Appellant refused to consider the possible accommodations presented to her that would allow her and the father to visit the children without their younger siblings. Appellant demonstrated an unwillingness to do whatever was necessary to reunite with her children.

{¶ 47} To the extent that appellant argues the visitation restriction was ordered based on hearsay in the therapist's report, we note that the decision regarding the visitation restriction was made at a shelter care hearing, and not at the permanent custody hearing.[2] Permanent custody hearings are the exception to the general rule that hearsay can be considered in juvenile custody dispositions. *See* Juv.R. 34(B)(2) and (I). Moreover, it was

---

2. We note that appellant's hearsay argument in her brief largely relates to the court's decision to restrict visitation, and not the trial court's decision to admit this report at the permanent custody hearing. The focus of the decision was on appellant's failure to visit and to meet the emotional needs of the children, not the correctness of this report. Regardless, we note that even without the admission of this exhibit, the evidence supports a finding that permanent custody is in the children's best interest.

appellant's response to this decision that was the basis for the court's determinations in this case. Appellant disagreed with the decision and wanted the younger children to attend visitations, but yet once this decision was made, appellant chose not to visit or to accept any accommodations that would allow her to visit.

{¶ 48} In addition, as discussed above, the court's decision was based on a finding that the children could not be placed with their parents within a reasonable time. Initially, the magistrate found that because the agency had failed to provide support for the family during the reunification in March 2012, it was possible that the parents could provide a home within a reasonable amount of time. As the magistrate discussed, the decision essentially gave the parents a second chance.

{¶ 49} However, even given more time, appellant failed to establish that the children could be returned to her home and instead, the children's need for stability increased as further time in foster care passed. Appellant failed to visit, evidencing an indifference to the emotional needs of the children where the relationship with their parents was concerned. In addition, the family moved several times, and as mentioned by the trial court failed to establish a safe home environment for the children. Despite the home study investigator's multiple contacts with appellant, no home study was ever completed. Appellant's inaction in the case led to the trial court's determination that appellant was unable to remedy the conditions that led to the children's removal.

{¶ 50} Appellant also argues that the agency failed to provide reasonable efforts to reunite the family. However, the agency provided therapeutic visitation for the parents to work on their bond with the children. When problems arose and the restriction regarding the younger children was imposed, appellant simply failed to visit because she disagreed with the decision, evidencing a lack of commitment to do whatever reunification required. On remand, the agency attempted to perform a home study, but again, due to appellant's

inaction and the family's frequent moves and the agency's inability to locate the family, this requirement was not completed.

{¶ 51} After carefully reviewing all of the evidence, we find the trial court's decision to grant permanent custody is supported by the evidence. The parents were essentially given a second chance at reunification, but failed to avail themselves of the opportunities presented which would allow them to establish that they could provide a safe and stable home for the children. Despite appellant's arguments to the contrary, the court's finding that appellant was unable to provide a legally secure placement for M.C. and G.T. is supported by the evidence. Appellant's sole assignment of error is overruled.

{¶ 52} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.