[Cite as *In re S.K.*, 2014-Ohio-563.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


IN THE MATTER OF:                         :

      S.K.                                       :          CASE NO.   CA2013-06-108

                                               :          O P I N I O N
                                                      2/18/2014

                                               :

                                               :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0398


John D. Treleven, 810 Sycamore Street, 2nd Floor, Cincinnati, Ohio 45202, for appellant, A.K.

Billy Guinigundo, 5331 South Gilmore Road, Fairfield, Ohio 45014, for appellee, Pamela Wendt

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

Nicole M. Stephenson, 30 North D Street, Hamilton, Ohio 45013, guardian ad litem


     **HENDRICKSON, P.J.**

     **{¶ 1}** Appellant, A.K. (Mother), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her biological son, S.K., to appellee, Pamela Wendt, a nonrelative. For the reasons discussed below, we affirm the juvenile court's decision.

{¶ 2} In September 2011, the Butler County Department of Job and Family Services, Children Services Division (the Agency), filed a complaint alleging S.K., born April 23, 2010, was a neglected and dependent child. The complaint was filed after it was discovered that Mother, who had just given birth to another child, L.S., had tested positive for Vicodin and amphetamines. Emergency custody of S.K. was given to Wendt, the biological grandmother of L.S., and a guardian ad litem was appointed to represent S.K.'s interests.[1]

{¶ 3} On February 17, 2012, S.K. was adjudicated a dependent child, and temporary custody of S.K. was given to Wendt. A case plan to reunify Mother with S.K. was established, which required Mother undergo and complete a substance abuse program, submit to random drug screenings, and obtain stable and suitable housing and employment.

{¶ 4} In July 2012, the Agency filed a motion seeking to have legal custody of S.K. awarded to Wendt. Wendt subsequently filed her own motion for legal custody on February 15, 2013, which caused the Agency to withdraw its motion. Mother opposed Wendt's motion, arguing she should have custody of S.K.

{¶ 5} On February 27, 2013, a hearing before a magistrate was held on Wendt's motion for legal custody. At this hearing, the magistrate heard testimony from Mother, Emily Thompson, a caseworker with the Agency, Wendt, and two of Wendt's family members, R.S., Wendt's son and the biological father of L.S., and J.J., Wendt's teenage daughter. After considering the guardian ad litem's report and the exhibits and testimony presented at the hearing, the magistrate issued a decision recommending Wendt's motion for legal custody be granted and Mother be given visitation with S.K.

{¶ 6} Mother timely filed an objection to the magistrate's decision, arguing the decision was against the manifest weight of the evidence. A hearing on Mother's objection

---

1. S.K. and L.S. have different biological fathers. S.K. is the biological son of J.E., who is currently incarcerated. L.S. is the biological son of R.S. Wendt is R.S.'s mother.

was held on June 3, 2013. The juvenile court issued a decision overruling Mother's objection and adopting the magistrate's decision on June 6, 2013. Mother timely appealed, setting forth one assignment of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT MOTHER WHEN IT AWARDED CUSTODY OF THE CHILD TO APPELLEE, AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} In her sole assignment of error, Mother argues the juvenile court's decision to award legal custody to Wendt was against the manifest weight of the evidence. Mother contends the evidence introduced at the hearing demonstrated she substantially complied with the requirements of the Agency's case plan for reunification and she remedied the issues that led to S.K.'s removal from her custody.

{¶ 10} Legal custody proceedings vest in the custodian the right to have physical care and control of the child, subject to any residual parental rights and responsibilities that remain intact with the birth parents. *In re L.A.B.,* 12th Dist. Fayette No. CA2012-03-008, 2012-Ohio-5010, ¶ 12, citing *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 14-15. R.C. 2151.353(A)(3) provides that if a child has been adjudicated abused, dependent, or neglected, a juvenile court may award legal custody of the child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." A juvenile court, therefore, "may award legal custody to a nonparent upon a demonstration by a preponderance of the evidence that granting legal custody to the nonparent is in the child's best interest." *In re L.A.B.* at ¶ 12. "A preponderance of the evidence is evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *In re M.M.*, 12th Dist. Fayette No. 2010-12-034, 2011-Ohio-3913, ¶ 8.

{¶ 11} A juvenile court's custody determination under R.C. 2151.353 must be based on the best interests of the child. *In re K.B.*, 12th Dist. Butler CA2012-03-063, 2013-Ohio-858, ¶ 11; *In re S.K.G.*, 12th Dist. Clermont No. CA2008-11-105, 2009-Ohio-4673, ¶ 11. In determining the best interests of the child, the juvenile court must consider all relevant factors, including, but not limited to the applicable factors set forth in R.C. 3109.04(F)(1). *In re K.B.* at ¶ 11. Such factors include: the wishes of the parents; the child's interaction and interrelationship with other family members or others who may significantly affect the child's best interest; the child's adjustment to home, school and community; the mental and physical health of all persons involved; the likelihood that the caregiver would honor and facilitate or had honored and facilitated visitation and parenting time; whether support orders have been followed; and whether household members or parents have been convicted or pled guilty to certain offenses. See R.C. 3109.04(F)(1).

{¶ 12} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re M.M.* at ¶ 10, citing *In re Brown*, 142 Ohio App.3d 193, 198 (12th Dist.2001). An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re J.M.*, 12th Dist. Warren App. No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Furthermore, the appellate court "must be mindful that the trial court is better equipped to examine and weigh the evidence, determine the credibility of the witnesses, and make decisions concerning custody." *In re S.K.G.* at ¶ 9.

{¶ 13} After reviewing the record, we find the juvenile court did not abuse its discretion in granting legal custody of S.K. to Wendt. The court considered all relevant best interest

factors before awarding custody to Wendt, and its decision in weighing those factors in favor of Wendt is supported by the preponderance of the evidence.

{¶ 14} The evidence presented at the hearing demonstrated S.K., now three years old, has spent half of his life living with Wendt. S.K. is doing very well in Wendt's care and a strong, positive bond has formed between the two. Wendt testified S.K. calls her "Nana" and the two have a relationship akin to that of a grandmother-grandson or mother-son relationship. S.K. is also very attached to Wendt's teenage daughter, J.J. The two share a big sister-little brother relationship, with J.J. acting as S.K.'s "defender."

{¶ 15} The testimony further revealed S.K.'s development is progressing under Wendt's care. Specifically, S.K. is learning the alphabet and can now identify colors and count to 20. Wendt takes S.K. to a daycare provider who works with the child to prepare him for school. In addition, there are other children for S.K. to socialize with when he is at his daycare provider's house.

{¶ 16} Wendt has been employed as a fleet administrator for a trucking company for the last 13 years. This position allows her to provide for S.K.'s health and physical needs. Wendt, S.K., and J.J. reside in a four-bedroom home in Trenton, Ohio that has been approved by the Agency. S.K. has his own room, clothing, toys, and belongings. Wendt testified S.K. is current on all his health check-ups and required vaccinations and she uses the hospital that Mother prefers for S.K.'s medical needs.

{¶ 17} The record further reveals Wendt is an active participant in ensuring that S.K. has contact with his family members. Wendt is the biological grandmother of S.K.'s half-brother, L.S. Wendt often has L.S. in her home so that L.S. and S.K. can play with one another. Wendt also facilitates visitation between S.K. and R.S., L.S.'s biological father and the only father-figure S.K. knows. Wendt ensures that S.K. has time to visit with R.S. and L.S. two to three times a week.

{¶ 18} There is no indication in the record that Wendt hinders Mother from spending time with S.K. Rather, the record reveals Wendt complies with the court's visitation order and tries to maintain some flexibility with Mother so Mother can see S.K. when she is available. Wendt testified that it is clear S.K. "loves his [M]other to death" and, in addition to scheduled visitation, Wendt would be fine with Mother contacting S.K. by phone.

{¶ 19} The record also demonstrates S.K. has a loving bond with Mother. There was testimony that S.K. "lights up" when he sees Mother. However, S.K.'s visitation with Mother is somewhat infrequent, largely due to Mother's transportation problems. Since the Agency's involvement in September 2011, Mother has had her driver's license suspended at least two times. Mother lost her license after she was involved in a traffic accident and it was discovered she did not have insurance. S.K. was a passenger in Mother's car at the time of this accident, and he sustained minor injuries. Mother's license was also suspended for failing to pay child support. During the time Mother's license was suspended, she continued to drive and transport S.K. Mother states she is no longer driving without a license, and her mother, brother, or boyfriend would help transport S.K. if he were placed in her care.

{¶ 20} The record further indicates that while Mother would like to have S.K. reside with her, she has failed to complete the necessary requirements set forth in the Agency's case plan for reunification. Although Mother has undergone drug and alcohol treatment and, within the last six months, has become more consistent in complying with the Agency's requests for drug screenings, Mother has not maintained stable and suitable housing and employment. Her failure to maintain housing and employment has resulted in concern about her ability to take care of S.K.'s basic needs if he were placed in Mother's custody. Up until two months before the custody hearing, Mother did not have steady housing. Mother had drifted between her parents' house, her grandmother's house, and friends' houses. Mother now lives with her parents in a five-bedroom home in Hamilton, Ohio. Seven adults and two

dogs live in this home. Mother has her own room, which is large enough to hold a separate bed, clothing, and toys for S.K. Thompson, an Agency caseworker, testified that the home is appropriate for S.K., but she is concerned about individuals smoking in the house given that S.K. has breathing problems and must use an inhaler.

{¶ 21} Thompson also expressed concern about Mother's ability to financially provide for S.K. Mother has not maintained steady employment. At the time of the hearing, Mother testified she recently found employment at two separate businesses. Mother testified she would be working Monday through Friday from 11:00 a.m. to 2:00 p.m. at a restaurant and from 4:00 p.m. to 10:00 p.m. at a food company. Mother testified she had been working at the restaurant location for three weeks and would be starting her job with the food company "soon." Prior to obtaining these two positions, Mother worked on-and-off through a "temp agency." Mother does not earn enough money to cover all of her expenses and allow for an independent living situation. Mother testified she is currently in arrearages for child support.

{¶ 22} While Mother has made positive progress in an effort to regain custody of S.K., based on the evidence in the record, we find that the juvenile court did not abuse its discretion in determining it was in S.K.'s best interest for legal custody to be granted to Wendt. Though Mother's desire to have custody of S.K. is apparent, the evidence indicates Mother has not fully complied with her case plan for reunification with the child, the child is doing very well in Wendt's care, and the guardian ad litem supports the award of legal custody of S.K. to Wendt. The juvenile court's decision was not against the manifest weight of the evidence.

{¶ 23} Accordingly, Mother's sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.