[Cite as *In re L.S.*, 2018-Ohio-1981.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF: :

L.S., et al. :

:

:

:

CASE NOS.  CA2017-11-157
CA2017-11-160

O P I N I O N
5/21/2018

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 17-D000046 and 17-D000047

Kim Bui, 8080 Beckett Center Drive, Suite 112, West Chester, Ohio 45069, guardian ad litem

Joshua G. Burns, P.O. Box 959, Lebanon, Ohio 45036, attorney for children

David C. Wagner, 423 Reading Road, Mason, Ohio 45040, for appellant, R.S.

Gray & Duning, John C. Kaspar, 130 East Mulberry Street, Lebanon, Ohio 45036, for appellee, R.S.

David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children Services

**RINGLAND, P.J.**

{¶ 1} Appellant, the biological mother ("Mother") of L.S. and D.S. (referred to collectively as the "children"), appeals the decisions of the Warren County Court of Common Pleas, Juvenile Division, adjudicating the children abused and dependent, temporarily

suspending Mother's visitation, and granting legal custody of the children to their biological father ("Father").

{¶ 2} On April 24, 2017, Warren County Children Services ("WCCS") filed complaints alleging the children were abused and dependent. Specifically, WCCS alleged it received an anonymous referral concerning Mother's mental health and illegal drug use, including an attempted suicide in the presence of the children and the presence of a methamphetamine lab at Mother's residence. Based on the referral, WCCS and police responded to Mother's residence on April 8, 2017. Mother denied the allegations, refused to submit to a drug screen, and refused to agree to a safety plan.

{¶ 3} WCCS returned to Mother's residence on April 10, 2018, but Mother and her paramour would not let the caseworker exit her vehicle. On April 17, 2018, Father contacted WCCS and reported that he received a photograph of a text message depicting Mother informing her paramour she almost overdosed in front of D.S. On April 19, 2018, WCCS returned to Mother's residence and Mother submitted a drug screen positive for amphetamines and methamphetamines. Mother admitted to using methamphetamine the day before the test. The complaint further provided that Mother and her paramour had been evicted from their residence.

{¶ 4} The juvenile court held a shelter care hearing on the date of the filing of the complaints. At the conclusion of the hearing, the juvenile court placed the children in the temporary custody of Father and granted protective supervision to WCCS. The juvenile court ordered that Mother complete a drug and alcohol evaluation, submit to random drug screens, and complete a psychological evaluation. The juvenile court ordered Father to submit to random drug screens and complete a mental health evaluation.

{¶ 5} On July 11 and 17, 2017, the juvenile court held adjudicatory hearings. Vanessa Henson, an investigative caseworker for WCCS, testified regarding the April 8, 2017

referral and the facts asserted in the complaints. Henson explained that on April 8, 2017 she did not observe a methamphetamine lab in the residence. Mother informed Henson that Tommy Steele resided with her and helped care for the children. Mother stated she was aware of Steele's history of illegal drug use and his recent arrest for drug-related charges. Mother reported she was diagnosed with severe anxiety, severe depression, post-traumatic stress disorder ("PTSD"), and schizoaffective disorder. Mother was not currently taking any medications for her mental health diagnoses. Mother also informed Henson of an ongoing private custody case with Father.

{¶ 6} Henson met with Father on April 10, 2017. Father reported that his relationship with Mother ended in November 2016. Father expressed concern regarding Mother's illegal drug use and failure to stay current with bill payments. Father reported an incident that occurred before their relationship ended where Mother threatened to commit suicide in front of the children if Father did not leave work and come home. Father submitted a drug screen that was negative for illegal substances.

{¶ 7} Deputy Christopher Brombaugh of the Warren County Sheriff's Office testified that on April 11, 2017, he responded to a gas station in Franklin, Ohio for a reported drug overdose. Upon arrival, Brombaugh discovered Mother unconscious and emergency medical personnel treating Mother with Narcan. Following the incident, Mother's paramour received a text message from Mother's phone number claiming she almost overdosed in front of D.S. Mother's paramour photographed the text message and sent it to Father. Father sent the photograph to Henson approximately one week after the incident.

{¶ 8} Henson testified she returned to Mother's residence on April 19, 2017 during Mother's eviction. Henson testified Mother submitted a positive drug screen. Mother admitted to using methamphetamine the day before and agreed to let the children stay with Father. However, on April 24, 2017, Mother and her paramour visited the WCCS office and

demanded another drug screen. Mother informed Henson she was no longer in agreement with the voluntary safety plan. Henson described Mother's demeanor as high energy and distracted. Henson perceived her demeanor as a sign of potential mental health concerns or illegal drug use.

{¶ 9} Mother testified and denied using methamphetamines, amphetamines, and opiates. Mother disputed the validity of the results of her positive drug screens. She explained that she would voluntarily submit to another drug screen conducted by any entity besides WCCS. Mother also disputed the testimony regarding her threats of suicide and the drug overdose and stated, "[s]eems that everybody's fabricating a lot * * *." With respect to mental health, Mother explained she has prior diagnoses for anxiety and PTSD. At the time of adjudication, Mother admitted she was homeless and had been staying "with a few friends here and there, kind of, bounc[ing] around."

{¶ 10} Mother's paramour testified he had never seen Mother use methamphetamine. While he admitted sending the text message to Father regarding Mother's overdose, he questioned the accuracy of the text message and that Mother was in fact the person who sent it. Mother's paramour submitted a drug screen to WCCS that was positive for methamphetamines and amphetamines. He likewise denied using illegal drugs and asserted WCCS fabricated the drug screen results.

{¶ 11} At the conclusion of the hearings, the juvenile court adjudicated the children abused and dependent, pursuant to R.C. 2151.031(B) and R.C. 2151.04(C), respectively. On July 21, 2017, the juvenile court held a dispositional hearing. Pursuant to its complaints, WCCS sought temporary custody of the children to Father and protective supervision to WCCS.

{¶ 12} WCCS supervisor, Ashley Stutzman, testified that following removal of the children, the agency developed a case plan with services for Mother and Father. Mother

refused to sign the case plan. Stutzman testified that Mother continued to deny illegal drug use and mental health issues. WCCS made referrals for Mother in April 2017, but Mother failed to complete the assessments for such referrals. Mother returned drug screens in April, May, twice in June, and July, that were all positive for amphetamines and methamphetamines. Mother attended supervised visits with the children, but Stutzman expressed concerns with her inability to focus, arriving late, and leaving early. Based on Mother's behavior, WCCS had concerns she may have been under the influence of illegal drugs during visitation. Stutzman testified WCCS was seeking to suspend Mother's visitation until Mother could alleviate the concerns based on her engagement in case plan services.

{¶ 13} At the time of disposition, Father had completed all his case plan services. Father had no recommendations from his drug and alcohol assessment and was recommended for individual counseling from his mental health assessment. Father was currently engaged with this recommendation and had provided no positive drug screens throughout the pendency of this case. Stutzman testified that she would be comfortable with the juvenile court granting legal custody to Father. Father testified he was seeking legal custody of the children and his attorney made an oral motion for legal custody during the dispositional hearing.

{¶ 14} Mother testified the children should be returned to her custody. Mother denied having any mental health or substance abuse issues. Mother again disputed the results of her prior drug screens and expressed her distrust for WCCS. Mother explained that she would provide the juvenile court a negative drug screen that day, but refused to submit a drug screen to WCCS based on her distrust for the agency. However, when the juvenile court provided Mother an opportunity to submit a drug screen to the court after the dispositional hearing, she still refused.

{¶ 15} The guardian ad litem ("GAL") for the children expressed her concern with the

impact that suspending visitation may have on the children. The GAL asserted that Mother had appropriate interaction with the children during visitation. Therefore, the GAL recommended continuing supervised visitation.

{¶ 16} At the conclusion of the dispositional hearing, the juvenile court granted legal custody of the children to Father and suspended Mother's visitation until she could produce a negative drug screen. Following disposition, Mother filed objections to the magistrate's decisions. The juvenile court overruled Mother's objections.

{¶ 17} Mother timely appealed the decisions of the juvenile court, setting forth six assignments of error. For ease of discussion, we address Mother's assignments of error out of order.

{¶ 18} Assignment of Error No. 5:

{¶ 19} THE COURT ERRED WHEN IT ADJUDICATED THE CHILDREN ABUSED AND DEPENDENT WITHOUT SUFFICIENT EVIDENCE.

{¶ 20} Assignment of Error No. 6:

{¶ 21} THE COURT ERRED WHEN IT ADJUDICATED THE CHILDREN ABUSED AND DEPENDENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 22} Mother argues that the juvenile court erred in finding the children abused and dependent.

{¶ 23} A trial court's determination that a child is abused, neglected, or dependent must be supported by clear and convincing evidence. R.C. 2151.35(A). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 24} R.C. 2151.031(B) and 2929.22 provide that a child is abused if he or she is "endangered" by a parent creating a substantial risk to the health or safety of the child, by

violating a duty of care, protection, or support. R.C. 2151.04(C) provides that a "dependent child" is any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." The determination that a child is dependent requires no showing of fault on the parent's part. *In re S.W.*, 12th Dist. Brown No. CA2011-12-028, 2012-Ohio-3199, ¶ 12. Rather, the focus is on the child's condition or environment and whether the child was without adequate care or support. *In re W.C.H.*, 12th Dist. Butler No. CA2014-02-057, 2015-Ohio-54, ¶ 14. However, a court may consider a parent's conduct insofar as it forms part of the child's environment. *In re S.J.J.*, 12th Dist. Butler No. CA2006-02-021, 2006-Ohio-6354, ¶ 12. "A parent's conduct is significant if it has an adverse impact on the child sufficient to warrant intervention." *In re S.W.* at ¶ 12.

{¶ 25} This court's review of a juvenile court's decision adjudicating a child abused or dependent is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Day*, 12th Dist. Clermont No. CA2002-09-073, 2003-Ohio-3544, ¶ 20. Even if a trial court's judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 9. A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.* at ¶ 10.

{¶ 26} In weighing the evidence, a reviewing court must be mindful of the

- 7 -

presumption in favor of the finder of fact. *Id.* In determining whether the trial court's decision is manifestly against the weight of the evidence, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.* A reversal on manifest weight grounds should only be in exceptional circumstances, when the evidence weighs heavily against the judgment. *In re P.G.*, 12th Dist. Warren Nos. CA2015-01-009 and CA2015-01-010, 2016-Ohio-1433, ¶ 44.

{¶ 27} The juvenile court found the children abused and dependent because they were in danger and in a condition and environment that warranted the state in assuming guardianship. In making its findings, the juvenile court stated it judged the credibility of the witnesses and found significant differences between the presented testimony. The juvenile court found the witnesses presented by WCCS were corroborative of one another and that Mother's reactions during her testimony coincided with WCCS' concerns. Thus, the juvenile court accorded more weight to the testimony of WCCS' witnesses. The juvenile court found Mother has a history of illegal drug use and let the children reside with a known drug user. Mother has a history mental health issues coupled with no history of treatment. Additionally, Mother made threats of suicide, does not have stable housing, and overdosed on opiates requiring emergency medical personnel to administer Narcan.

{¶ 28} After a thorough review of the record, we find the juvenile court's decision adjudicating the children abused and dependent was supported by clear and convincing evidence and not against the manifest weight of the evidence. The greater amount of credible, competent evidence supports the juvenile court's finding that WCCS presented clear and convincing evidence the children were abused and dependent.

{¶ 29} As the juvenile court found, the record contains a great degree of evidence regarding Mother's issues with mental health and the use of illegal drugs. While Mother denied these issues, she submitted multiple drug screens positive for amphetamines and methamphetamines and overdosed on opiates in the presence of D.S. Police testified regarding the circumstances of Mother's overdose, which was corroborated by Father's testimony regarding the text message photograph from Mother's paramour. Mother and her paramour claim that WCCS is compromising the validity of the drug screen results, and thus, the positive drug screens cannot be trusted. However, the juvenile court found this claim not credible and we defer to the factfinder with respect to credibility determinations. *State v. Rowley*, 12th Dist. Clinton No. CA2016-10-019, 2017-Ohio-5850, ¶ 55.

{¶ 30} Moreover, the record is devoid of any evidence to support their assertion. Rather, the record contains substantial evidence to the contrary, as WCCS presented testimony Mother admitted to using illegal drugs, she overdosed on opiates, and permitted a known drug user to reside with her and the children. Thus, considering the overwhelming evidence of Mother's illegal drug use, this court will not speculate regarding Mother's unsupported claim that WCCS repeatedly fabricated her positive drug screen results. *See In re E.F.*, 12th Dist. Clinton Nos. CA2016-03-003 thru CA2016-03-007, 2016-Ohio-7265, ¶ 36 (stating a juvenile court is not required to rule on custody motions based upon groundless speculation regarding drug use). Additionally, Mother was later evicted from her then-residence and was homeless at the time of the adjudicatory hearings. Therefore, the juvenile court's decision adjudicating the children abused and dependent was supported by clear and convincing evidence and not against the manifest weight of the evidence.

{¶ 31} Accordingly, Mother's fifth and sixth assignments of error are overruled.

{¶ 32} Assignment of Error No. 1:

{¶ 33} THE TRIAL COURT ERRED WHEN IT VIOLATED MOTHER'S RIGHT TO

DUE PROCESS OF LAW BY AWARDING CUSTODY OF THE MINOR CHILDREN TO FATHER WITHOUT PROVIDING HER ADEQUATE NOTICE.

{¶ 34} Assignment of Error No. 4:

{¶ 35} THE COURT ERRED WHEN IT AWARDED LEGAL CUSTODY TO FATHER WITHOUT A FINDING THAT MOTHER WAS PROPERLY SERVED WITH FATHER'S MOTION FOR CUSTODY PURSUANT TO JUVENILE RULE 16.

{¶ 36} Mother contends the juvenile court denied her due process when it awarded legal custody of the children to Father at the dispositional hearing. In so doing, Mother states she had notice that WCCS was seeking a disposition of temporary custody to Father with protective supervision to WCCS, but not that the juvenile court could grant legal custody to Father. Mother contends the oral request for legal custody at the dispositional hearing was insufficient to provide proper notice. Therefore, the juvenile court erred in granting legal custody to Father.

{¶ 37} Contrary to Mother's assertion, a natural parent is not required to file a written motion for legal custody. *In re C.P.*, 12th Dist. Brown No. CA2010-12-025, 2011-Ohio-4563, ¶ 19. Pursuant to R.C. 2151.353(A),

> If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * (3) [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings.

"[A] parent has an inherent right to the custody of his or her child, and because R.C. 2151.353 specifically empowers a trial court to grant legal custody of a child to a parent, * * * a formal motion for legal custody need not be filed by a parent before a trial court may properly consider granting legal custody to that parent." *In re C.P.* at ¶ 19. The statutory

- 10 -

requirement that a motion be filed is specific only to "any other person," rather than a parent. *In re B.L.D.*, 12th Dist. Fayette Nos. CA2010-09-026 and CA2010-10-030, 2011-Ohio-3139, ¶ 10; *see also In re Estate of Holycross*, 112 Ohio St.3d 203, 2007-Ohio-1, ¶ 27 (stating all persons are "conclusively presumed to know the law").

{¶ 38}  Moreover, the summons on the complaint filed on May 5, 2017 informed Mother that "[i]f the Court makes an adjudication of dependency, neglect or abuse * * *, this may result in: * * * C. [a]n award of legal custody of the child(ren) to either parent or to any other person the Court deems appropriate."  Thus, based on the plain language of the statute and the content contained in the complaint and summons, Mother was not denied due process when the juvenile court granted Father legal custody at the dispositional hearing.

{¶ 39}  Mother's first and fourth assignments of error are overruled.

{¶ 40}  Assignment of Error No. 2:

{¶ 41}  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND IT WAS IN THE CHILDREN'S BEST INTEREST TO AWARD LEGAL CUSTODY TO FATHER.

{¶ 42}  Assignment of Error No. 3:

{¶ 43}  THE COURT ABUSED ITS DISCRETION WHEN IT SUSPENDED VISITATION BETWEEN MOTHER AND THE CHILDREN.

{¶ 44}  Mother argues the juvenile court abused its discretion in suspending her visitation and awarding Father legal custody of the children.  Specifically, Mother contends the best interest factors weighed against granting legal custody.  In so doing, Mother relies on the GAL's recommendations to the juvenile court.  Additionally, Mother questions Father's ability to provide a stable, permanent residence because after his upcoming move, the children will have lived in their third residence in a six-month period.  Mother also asserts she intends to progress within her case plan, and therefore, the juvenile erred in suspending her visitation and granting Father legal custody.

**{¶ 45}** As stated above, once a child is adjudicated abused or dependent, the juvenile court may award custody of the child to a parent pursuant to R.C. 2151.353(A)(3). The decision whether to award legal custody must be based on the best interest of the child. *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 18.

**{¶ 46}** To determine the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors. *In re L.E.N.*, 12th Dist. Clinton No. CA2010-11-019, 2011-Ohio-1722, ¶ 11. There is no statutory mandate that the juvenile court expressly consider and balance each of the factors listed in R.C. 3109.04(F), but it may consider those factors and any other relevant factors in making its custody determination. *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. These factors include, but are not limited to: (1) the wishes of the parents, (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest, (3) the child's adjustment to home, school and community, (4) the mental and physical health of all persons involved, (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time, and (6) whether support orders have been followed. *In re A.L.H.*, 12th Dist. Preble No. CA2010-02-004, 2010-Ohio-5425, ¶ 9.

**{¶ 47}** An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re S.K.*, 12th Dist. Butler No. CA2013-06-108, 2014-Ohio-563, ¶ 12. An abuse of discretion is more than an error of law or judgment. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12. Rather, it implies the juvenile court's decision was unreasonable, arbitrary, or unconscionable. *Id.* The juvenile court's discretion in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17. Thus, "an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility." *In*

*re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 43.

{¶ 48} In making its decisions to suspend Mother's visitation and grant Father legal custody of the children, the juvenile court considered the relevant best interest factors in light of the evidence presented at the adjudicatory and dispositional hearings.

{¶ 49} With respect to Mother, the juvenile court expressed a heavy concern with the degree of her lack of progress in completing the goals set forth in her case plan. The juvenile court found Mother had the ability to make progress in her case plan, but failed to put forth any effort to meet the goals therein. The juvenile court acknowledged Mother attended visitation. However, the juvenile court stated she failed to address most of the concerns underlying this case. The juvenile court found Mother "hasn't really done anything to assure anyone, or to support any basis for" a finding that it is "safe to" return the children to her custody. Rather, Mother has failed to address her continuing illegal drug use and has failed to complete any of the mental health or drug assessments proscribed by her case plan. The juvenile court found these failures indicative of Mother's future participation, or lack thereof, in completing the goals in her case plan.

{¶ 50} With respect to Father, the juvenile court found that he recognizes the importance of Mother in the children's lives and has made efforts to maintain contact between Mother and the children. The juvenile court stated it was clear that Father was willing to protect the children from any risk and protective supervision was not necessary moving forward.

{¶ 51} Due to Mother's distrust of WCCS' testing process, the juvenile court provided that Mother could submit a drug screen to the court following the dispositional hearing, but she refused. Thereafter, the juvenile court found visitation inappropriate and temporarily suspended it. However, the juvenile court's suspension of visitation was not absolute, as it provided that it will entertain a motion for parenting time should Mother seek drug treatment

- 13 -

and begin to take accountability for her actions.

{¶ 52} After thoroughly reviewing the record, we find the juvenile court did not abuse its discretion in suspending Mother's visitation and granting Father legal custody of the children.

{¶ 53} Although Mother has attended visitation with the children, this is where her progress in completing the goals set forth in her case plan ends. Most of the concerns that provided for WCCS' involvement in this case remained at the time of the dispositional hearing. Mother testified she is willing to work towards completing the goals of her case plan, but as the juvenile court noted, her actions throughout the pendency of this case suggest otherwise. Mother's assertions ring hollow considering her absolute disregard for completing case plan objectives and her complete denial of accountability for her illegal drug use and mental health issues.

{¶ 54} Mother provided multiple positive drug screens for amphetamines and methamphetamines and overdosed on opiates in front of one of the children. Additionally, the record shows Mother has demonstrated suicidal behaviors in front of the children and has several untreated mental health diagnoses. Yet, Mother has not taken any steps in completing her assessments for drug abuse and mental health. Rather, as the juvenile court stated, Mother was in denial regarding these concerns and placed blame on WCCS for her positive drug screens. Furthermore, the record indicates WCCS had legitimate concerns that Mother attended visitation under the influence of illegal drugs. When given an opportunity to submit a drug screen to the juvenile court instead of WCCS, Mother still refused. Therefore, the juvenile court had a reasonable basis to find Mother was actively using drugs and suspend visitation. Unlike Mother, Father repeatedly submitted negative drug screens and has consistently engaged in case plan services. Father indicated he intends to remain in individual counseling and agreed to seek individual counseling for L.S. Father has stable

employment and housing, can provide for the children, and is bonded with them.

{¶ 55} Therefore, based on the evidence presented at the adjudicatory and dispositional hearings, the juvenile court did not abuse its discretion in suspending Mother's visitation and granting Father legal custody of the children.

{¶ 56} Accordingly, Mother's second and third assignments of error are overruled.

{¶ 57} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.