[Cite as *In re D.M.*, 2018-Ohio-2260.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


IN THE MATTER OF: :

D.M., et al. :

  :

  :

  :

CASE NOS. CA2017-12-017
CA2017-12-018

O P I N I O N
6/11/2018


APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. AB20163035 thru AB20163037


Martin P. Votel, Preble County Prosecuting Attorney, Valerie Sargent-Wood, Preble County Courthouse, 101 East Main Street, 1st Floor, Eaton, Ohio 45320, for appellee, Preble County Department of Jobs & Family Services

James B. Vanzant, P.O. Box 161, Eaton, Ohio 45320, for mother-appellant

Sarah E. Michel, 1329 East Kemper Road, Suite 4230, Cincinnati, Ohio 45246, for father-appellant


**RINGLAND, J.**

{¶ 1} Appellants, the biological parents ("Mother" and "Father") of D.M., Ra.M., and Ry.M. (referred to collectively, as the "children"), appeal a decision of the Preble County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to appellee, Preble County Department of Jobs & Family Services ("PCDJFS").

{¶ 2} On March 16, 2016, the juvenile court granted PCDJFS an ex parte order of

temporary custody of the children.  A few days later, the juvenile court held a shelter care hearing and continued the order of temporary custody.  PCDJFS filed a complaint alleging the children dependent.  The juvenile court held a hearing on the matter on July 20, 2016. Father admitted dependency and Mother failed to appear at the hearing.  The juvenile court adjudicated the children dependent.  The juvenile court appointed a representative for the Court Appointed Special Advocate ("CASA").  PCDJFS developed reunification case plans for both Mother and Father.  The case plans included objectives to attend visitation, complete psychological and drug and alcohol assessments and follow any subsequent recommendations, submit random drug screens and remain drug free, complete individual and family counseling and follow any subsequent recommendations, complete parenting classes, attend local church groups regarding substance abuse, and obtain stable housing and employment.

{¶ 3}   The matter proceeded to a dispositional hearing held on August 29, 2016 and the juvenile court ordered the children remain in the temporary custody of PCDJFS.  On April 12, 2017, PCDJFS filed a motion for a six-month extension of temporary custody.  Following an annual review hearing, the juvenile court granted PCDJFS' motion to extend temporary care custody.

{¶ 4}   On June 7, 2017, PCDJFS moved for permanent custody.  The motion alleged permanent custody was in the children's best interest because the children had been in the temporary custody of the agency for at least 12 of 22 consecutive months.  The motion further alleged a legally secure placement could not be achieved without granting the motion and the children could not and should not be placed with the parents within a reasonable period of time.  The parents objected to the motion and the matter proceeded to a hearing. Prior to the hearing, both parents filed motions for a second six-month extension of temporary custody.  The permanent custody hearing revealed the following facts.

- 2 -

{¶ 5} Rhiannon Harris, a caseworker for PCDJFS, testified neither parent obtained employment during the pendency of the case. Harris testified the parents failed to provide satisfactory proof of suitable housing. The parents completed psychological assessments, but failed to complete individual and family counseling and drug and alcohol assessments. The parents completed three out of ten hours of an online parenting course. Harris had difficulty contacting the parents for drug screens. Mother and Father each provided two screens that were negative for illegal drugs and one positive for amphetamines. Mother informed Harris the positive screen resulted from her use of methamphetamine. Father disputed the results of his positive screen.

{¶ 6} Harris testified the parents had supervised visitation an hour a week at the agency. The parents often attended visitation, but did miss some visits due to transportation issues and their respective times incarcerated during the pendency of this case. At the beginning of the case, the children demonstrated some behavioral concerns, such as using inappropriate language and had issues with anger and truancy. By the time of the permanent custody hearing, these concerns had been mostly alleviated. Harris testified the children are currently placed together and bonded with their foster parent, who has expressed a desire for adoption. The children's therapist and the foster parent testified regarding this bond and explained that the children are thriving in the foster parent's care. Harris testified a grant of permanent custody to the agency is in the children's best interest due to the parents' substantial lack of progress in achieving their case plan objectives, their respective criminal histories, both prior to and during the pendency of this case, their lack of parenting skills, and their issues with illegal drug abuse.

{¶ 7} The CASA representative testified and likewise recommended granting permanent custody to the agency. She explained the duration of temporary custody has taken an emotional toll on the children and they need permanency. The CASA

representative testified the children are thriving in their current placement where they reside at a stable home that is meeting their needs. Thus, an additional six months of temporary custody would not serve the best interest of the children.

{¶ 8} Mother testified that at the time of the hearing, she resided at a state prison due to convictions for theft and possession of methamphetamine in violation of the terms of her community control. Mother's incarceration began on April 12, 2017. Prior to the children's removal, Mother resided with Father, Father's ailing mother, and the children, in a one-bedroom, one-bathroom home. The grandmother slept in the bedroom and the remainder of the family slept on couches or on the floor in the living room. Mother testified that after removal, the parents experienced periods of homelessness. Mother has been voluntarily unemployed. Father was self-employed and inconsistently worked side construction or home repair jobs. The parents relied on the grandmother's disability income. Mother admitted to using methamphetamine for the past two years and has used heroin. Mother overdosed within the year preceding the hearing. She testified she would trade possessions to purchase illegal drugs. Mother testified she has not used illegal drugs since her incarceration. Mother stated she plans to continue drug treatment and to work towards achieving her case plan objectives upon her release from prison in February 2018, but that she could possibly move to a halfway house at an earlier date.

{¶ 9} Father testified he was convicted of obstruction of justice and disorderly conduct in 2017. He disputed the results of his positive drug screen for amphetamines. Father attended a few parenting classes in November 2016, but testified he had no reason for not continuing these classes in 2017. Father testified he attended most of the visitations, but was unable to do so for a period due to his incarceration.

{¶ 10} Following the hearing, the juvenile court granted PCDJFS permanent custody of the children and denied the parents' respective motions for a second six-month extension

of temporary custody.

{¶ 11} Both parents timely appealed the decisions of the juvenile court.

{¶ 12} Mother's sole Assignment of Error:

{¶ 13} THE TRIAL COURT ERRED IN PROCEEDING TO HEARING ON AND DETERMINATION OF THE AGENCY'S MOTION FOR PERMANENT CUSTODY BECAUSE THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO HEAR AND RULE UPON SAID MOTION.

{¶ 14} Mother argues the juvenile court did not have subject matter jurisdiction to hold a permanent custody hearing because the agency untimely filed its motion for a six-month extension of temporary custody. Specifically, Mother contends the agency filed its motion more than one year after the removal date of the children; therefore, R.C. 2151.353(G) terminated the original grant of temporary custody and divested the juvenile court of jurisdiction to issue further orders.

{¶ 15} Mother raises this argument for the first time on appeal. However, an additional dispositional order continuing an original temporary custody order constitutes a final appealable order. *In re Patterson*, 16 Ohio App.3d 214, 215 (12th Dist.1984). Therefore, Mother waived this argument by failing to object to or appeal from the juvenile court's grant of PCDJFS' motion for a six-month extension. *In re Nice*, 141 Ohio App.3d 445, 452 (7th Dist.2001). Nonetheless, we find no merit to Mother's claim, plain error or otherwise.

{¶ 16} A plain error is one that is "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). Plain error review is not favored in civil cases and is defined in such context as an error that "seriously affects the basic fairness, integrity, or public

reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. Appellate courts will only recognize plain error in extremely rare cases with exceptional circumstances. *In re E.J.*, 12th Dist. Warren No. CA2014-07-098, 2015-Ohio-731, ¶ 10.

{¶ 17} R.C. 2151.353(G) provides that any temporary custody order issued pursuant to R.C. 2151.353(A) shall terminate one year after the earlier of the date on which the complaint was filed or the children were first placed into shelter care. This is known as the "sunset date." *In re J.M.*, 12th Dist. Clermont No. CA2006-11-096, 2007-Ohio-4219, ¶ 29. The Ohio Supreme Court has held that the passing of the sunset date pursuant to R.C. 2151.353 does not divest juvenile courts of jurisdiction to enter dispositional orders. *In re Young Children*, 76 Ohio St.3d 632, 637-38 (1996).

{¶ 18} The Ohio Supreme Court further explained that the fact "[t]hat juvenile courts have continuing jurisdiction does not mean that public children services agencies * * * can ignore the mandates of the statute and rely on the court to save them from their own failures or oversights." *Id.* at 638. Neither does it mean that courts can grant dispositional orders indiscriminately. *Id.* Rather, the obligation to move for an extension of temporary custody prior to the sunset date is not vitiated and the failure to do so is not harmless error. *Id.* Accordingly, when the sunset date passes without a filing pursuant to R.C. 2151.415(A), a juvenile retains continuing jurisdiction and temporary custody terminates. *Id.*

{¶ 19} Nonetheless, a juvenile court may make further dispositional orders as it deems necessary to protect the children. *Id.* A juvenile court may assess each situation based on its merits and is not required to return children to a situation from which they originally needed protection solely because a children services agency missed a filing deadline. *Id.* Thus, "when the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been

resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child[ren]." *Id.* In turn, "[w]here the original problems have been resolved or sufficiently mitigated, courts may not make further dispositional orders based on the original complaint." *Id.*

{¶ 20} It is undisputed that PCDJFS filed its motion for a six-month extension of temporary custody after the sunset date. Therefore, the temporary custody order terminated, but the juvenile court retained continuing jurisdiction. Further, the juvenile court had discretion to make dispositional orders because the parents failed to remedy the problems that led to the original grant of temporary custody. The parents failed to make any appreciable progress in achieving their respective case plan objectives. They failed to obtain employment and suitable housing, engaged in criminal activity, submitted drug screens positive for amphetamines, and inconsistently attended visitation. Thus, the juvenile court did not err, plain or otherwise, in exercising its discretion and rendering a dispositional order in the best interest of the children.

{¶ 21} Accordingly, Mother's sole assignment of error is overruled.

{¶ 22} Father's Assignment of Error No. 1:

{¶ 23} THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO PREBLE COUNTY CHILDREN SERVICES BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.

{¶ 24} Father's Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED IN OVERRULING FATHER'S MOTION FOR EXTENSION OF TEMPORARY CUSTODY.

{¶ 26} Father contends PCDJFS failed to demonstrate by clear and convincing evidence that granting permanent custody to the agency was in the children's best interest.

Father asserts that the record contained evidence that he could meet his case plan objectives if the juvenile court granted his motion for a second six-month extension of temporary custody.

{¶ 27} Pursuant to R.C. 2151.415(D) and Juv.R. 14, a juvenile court may extend a temporary custody order for an additional period of up to six months, if it determines by clear and convincing evidence that (1) the extension is in the best interest of the children, (2) there has been substantial progress on the case plan since the original extension of temporary custody, (3) there has been substantial additional progress since the original extension of temporary custody toward reunifying the children with one of the parents or otherwise permanently placing the child, and (4) there is reasonable cause to believe that the children will be reunified with one of the parents or otherwise permanently placed within the period of extension. *In re H.G.*, 12th Dist. Clinton No. CA2014-11-014, 2015-Ohio-1764, ¶ 19.

{¶ 28} "Notably, the [extension] statute provides only that the juvenile court *may* extend the temporary custody order, not that it *must* do so." (Emphasis sic.) *Id.* at ¶ 20. Therefore, such decision is subject to review under an abuse of discretion standard. *Id.* An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. *See also In re S.A.*, 12th Dist. Butler Nos. CA2017-07-092 thru 098, 2017-Ohio-8792.

{¶ 29} "The rights to conceive and to raise one's children have been deemed 'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations

omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child[ren]." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 30} The state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's right to custody can be terminated. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 31} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When considering a manifest weight of the evidence challenge, the reviewing court

weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 10.

**{¶ 32}** "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA-2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the children. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

**{¶ 33}** R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-

home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 34} In granting PCDJFS' motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to the first statutory factor, the juvenile court found that Father loves the children, but has failed to make them a priority. The juvenile court found that despite exhaustive efforts by PCDJFS to assist Father, he could not provide appropriate housing for the children, had engaged in criminal activity, including illegal drug use, failed to fully complete parenting classes and counseling, and demonstrated inconsistency in attending visitation. The juvenile court further found the foster parent is bonded with the children, expressed a desire to adopt them, and has previous experience with adoption.

{¶ 35} In consideration of the second statutory factor, the juvenile court did not conduct an interview with the children. However, testimony indicated D.M. did not wish to return to Father's custody. The juvenile court noted the CASA representative's recommendation in favor of granting permanent custody.

{¶ 36} With respect to the third statutory factor, the juvenile court reviewed the children's custodial history and found the children were adjudicated dependent and had been

in the temporary custody of PCDJFS for 12 or more months of a consecutive 22-month period.

{¶ 37} In considering the fourth statutory factor, the juvenile court found the children's need for a legally secure placement could only be achieved by granting permanent custody to PCDJFS. Father demonstrated a lack of commitment to the children by failing to regularly support, visit, or communicate with the children when able to do so or by other actions showing an unwillingness to provide an adequate permanent home for the children. Father was unable to demonstrate reunification was possible within a reasonable time; therefore, permanent custody and the possibility of adoption was the best chance for the children to achieve a stable and healthy home environment.

{¶ 38} With respect to the fifth statutory factor, the juvenile court found Father was unable to meet the needs of the children and that he has failed continuously and repeatedly to substantially remedy the conditions causing the children's removal. Father failed to demonstrate a change in the behavior or circumstances that caused the removal. Father did not work diligently with PCDJFS, but did engage in criminal activity, failed to obtain employment and housing, and submitted a drug screen positive for amphetamines. The juvenile court noted Father attended some scheduled visitation, completed three of ten hours of an online parenting class, and obtained a psychological assessment. However, he made no further progress in completing his case plan objectives. Father testified he was requesting an extension of temporary custody to complete his case plan, but had no plan for achieving this goal. The juvenile court further found the children could not or should not be returned to Father within a reasonable time.

{¶ 39} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to PCDJFS. Father disputes the juvenile court's consideration of the statutory factors.

**{¶ 40}** After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence. *In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 31-38 (holding a grant of permanent custody is in a child's best interest where a parent fails to make any significant progress in his or her case plan and fails to remain drug free). Although Father testified he loved his children and believed reunification was in their best interest, there are compelling reasons to weigh the best interest factors in favor of permanent custody to PCDJFS. The record contains extensive evidence concerning Father's disregard for progressing within his case plan and refusal to substantially remedy the conditions causing the children's removal. Despite Father's assertion otherwise, the evidence does not indicate another six-month extension of temporary custody will have a different result than the prior 18 months of temporary custody.

**{¶ 41}** While Father made some effort to attend visitation, Father failed to make any significant progress in completing his case plan objectives. Father attended visitation, but missed some sessions due to transportation issues and his incarceration during this case. As stated above, he started an online parenting course in 2016, but testified he had no reason for not completing the course. Father obtained a psychological assessment, but failed to complete individual and family counseling and drug and alcohol assessments. The caseworker expressed difficulty contacting Father for drug screens and one of the three screens he submitted returned positive for amphetamines. Father disputed the result of this screen, but provided no explanation as to why the result could not be trusted. *In re L.S.*, 12th Dist. Warren Nos. CA2017-11-157 and CA2017-11-160, 2018-Ohio-1981, ¶ 30 (stating a juvenile court is not required to rule on custody motions based upon groundless speculation regarding drug use).

**{¶ 42}** Father testified he loves his children and believes they should be in his

custody. However, the record contains significant evidence to the contrary. Father remains unemployed and without appropriate housing despite testifying that he can obtain stable employment. His continued engagement in criminal activity, both before and during the pendency of this case, supports the juvenile court's finding that the children are not a priority in his life. Father testified he does not want to "give up on family," but his actions and inactions demonstrate otherwise. Aside from attending visitation, a thorough review of the record indicates Father has failed to take meaningful steps in accomplishing other goals in his case plan. Despite the diligent efforts of PCDJFS to provide an opportunity for reunification through case plan services, Father chose not to engage in case plan services while the children were in the temporary custody of PCDJFS.

{¶ 43} "It is important to have finality in custody determinations to protect the best interest of the child[ren]." *In re A.L.A.*, 11th Dist. Trumbull No. 2016-T-0022, 2016-Ohio-5887, ¶ 20. The children need to know whom they may rely upon for their care and nurture, and as the juvenile court found, the only way to achieve this is by a stable, permanent, and healthy, home environment. The initiation of this case occurred approximately two years ago, and considering Father's repeated failures to substantially remedy the conditions causing the children's removal, permanency for the children is not promoted by granting his motion for another six-month extension. "[A] parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23; *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32.

{¶ 44} Moreover, the children are bonded to one another and with their foster father, who has expressed a desire for adoption. The behavioral concerns at the time of removal are mostly alleviated and the children are doing well in school and attending counseling. Additionally, the caseworker recommended permanent custody to the agency due to Father's

substantial lack of progress in achieving his case plan objectives, his criminal history, including during the pendency of this case, his lack of parenting skills, and his issues with illegal drug abuse. The CASA representative likewise recommended granting permanent custody to the agency because the duration of temporary custody has taken an emotional toll on the children and they need permanency, which can be provided in their current placement.

{¶ 45} Therefore, the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence and not against the manifest weight of the evidence.

{¶ 46} Accordingly, Father's first and second assignments of error are overruled.

{¶ 47} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.